NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MICHAEL DASRATH, | : |
| Plaintiff | : |
| v. | : Civ. A. No. 02-2683 (DRD) |
|  | : **AMENDED OPINION** |
| CONTINENTAL AIRLINES, INC., | : |
| Defendant | : |

Edward L. Barocas, Esq.
Jeanne LoCicero, Esq.
American Civil Liberties Union
of New Jersey Foundation
P.O. Box 750
Newark, NJ 07101

Reginald T. Shuford, Esq.
E. Vincent Warren, Esq.
Catherine Y. Kim, Esq.
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004

Attorneys for Plaintiff

Peter B. Van Deventer, Jr., Esq.
Douglas H. Amster, Esq.
St. John & Wayne, L.L.C.
Two Penn Plaza East
Newark, NJ 07105

Attorneys for Defendant

1

**DEBEVOISE, Senior District Judge**

Plaintiff, Michael Dasrath, filed a complaint against Defendant Continental Airlines ("Continental"), alleging claims under 42 U.S.C. § 1981; Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d; and the New Jersey Law against Discrimination (the "NJLAD"), N.J.S.A. 10:5.1 et seq.  Plaintiff argues that Continental engaged in unlawful discrimination (in violation of all three statutes) when it removed him from one of its flights prior to its departure from Newark International Airport on December 31, 2001.  Continental's earlier motion to dismiss Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6) was denied in this court's opinion dated October 17, 2002.  Dasrath v. Cont'l Airlines, Inc., 228 F. Supp. 2d 531 (D.N.J. 2002).  Continental now moves for summary judgment.

## BACKGROUND

The facts of this case were discussed at length in this court's aforementioned opinion and need not be repeated in full.  The following facts are relevant to the present motion:

Plaintiff is a U.S. Citizen born in Guyana and is of dark complexion.  On December 31, 2001 he was removed from a Continental flight along with two other men, Edgardo Cureg and Saraleesan Nadarajah, also of dark complexion, before it departed from Newark Airport.

Prior to boarding the plane, a passenger in the waiting area, Camille Brooks, complained to a gate agent that two men were acting suspiciously.  Those men, Mr. Cureg and Dr. Nadarajah, as well as Ms. Brooks, were searched with a hand-held metal detector ("wanded") before they were allowed to board the plane.  Nothing unusual was found in that search.

Upon boarding the plane, Plaintiff took his assigned seat in the first class section, and Mr. Cureg took his assigned seat in the row in front of Plaintiff.  In addition to Plaintiff and Mr.

Cureg, several white passengers were also seated in the first class section. As Dr. Nadarajah boarded the plane he stopped and exchanged words with Mr. Cureg. Plaintiff contends that Dr. Nadarajah merely thanked Mr. Cureg for loaning him a cell phone and then returned the phone to Mr. Cureg. Continental contends that Dr. Nadarajah bent down and reached under a first class seat before proceeding to his assigned seat in the coach section.

After the passengers boarded, flight attendant Robin Gurnick observed Dr. Nadarajah sitting in coach, repeatedly getting out of his seat, retrieving his carry-on luggage from the overhead bin, taking items out of it, putting items back in it, and replacing the luggage in the overhead bin. Ms. Gurnick then saw Dr. Nadarajah retrieve his luggage once more, walk up the aisle to the front of the coach section and place his bag in the overhead bin at the front of that section before returning to his seat near the rear of the plane.

Shortly thereafter, Ms. Gurnick received a call on the plane's intercom system from another flight attendant, Johnny McCoy, who was stationed in the rear of the plane. Mr. McCoy said he had been observing a passenger, Dr. Nadarajah, who seemed very nervous and was acting in a suspicious manner. Ms. Gurnick then informed the captain, Werner Hamp, of the situation.

Captain Hamp walked to the back of the aircraft to observe Dr. Nadarajah. He claims to have seen him acting suspiciously and decided to investigate further. To provide time to investigate, Captain Hamp announced that the flight would be delayed. At that time, Dr. Nadarajah walked from the rear of the plane to the first class section and began speaking with Mr. Cureg. Plaintiff states that he never moved from his assigned seat and that he never spoke to Mr. Cureg nor Dr. Nadarajah at any time. Defendant, on the other hand, alleges that Plaintiff changed seats and began talking with Mr. Cureg and Dr. Nadarajah.

3

Meanwhile, Captain Hamp began questioning Ms. Brooks. Plaintiff states that while talking to Captain Hamp, Ms. Brooks pointed toward Plaintiff and told the Captain that "those brown skin men are behaving suspiciously." Continental disputes Plaintiff's allegation that Ms. Brooks used the Phrase "brown skin men" but agrees with Plaintiff's statement that Ms. Brooks pointed toward Plaintiff while talking to Captain Hamp.

Captain Hamp then exited the plane and discussed the situation with Gate Supervisor Manuel Guillan and Corporate Security Officer Jeff Jackel. Together, the three men checked the flight information on Mr. Cureg, Dr. Nadarajah and Plaintiff. Mr. Guillan informed Captain Hamp that Mr. Cureg and Dr. Nadarajah had come from London and that they had already passed through Immigration, Customs and the U.S. security checkpoint. He also informed Captain Hamp that those two passengers were wanded prior to boarding. Mr. Guillan then checked Plaintiff's flight information and informed Captain Hamp that he was a "non-revenue" passenger married to a Continental employee and that he was not traveling with Mr. Cureg and Dr. Nadarajah.

Mr. Guillan and Mr. Jackel offered to re-screen all three passengers along with their carry-on luggage but Captain Hamp declined. Instead, he ordered that Plaintiff, Mr. Cureg and Dr. Nadarajah be removed from the plane.

## STANDARD OF REVIEW

Summary judgment is appropriate when the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(c). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," See <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242,

248 (1986).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law,  Id.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment,  Id.   In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the nonmoving party by extending any reasonable favorable inference to that party; in other words, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor,'" Hunt v. Cromartie, 526 U.S. 541, 552 (1999), quoting, Anderson, 477 U.S. at 255.  But where the nonmoving party bears the burden of persuasion at trial, "the burden on the moving party may be discharged by 'showing' - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case," Celotex Corp. v. Catrett, 477 U.S. 317, 325 (U.S. 1986).

## DISCUSSION

### Unlawful Discrimination

To establish a case of unlawful discrimination under § 1981 a plaintiff must show: (1) plaintiff's membership in a racial minority;  (2) an intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in § 1981, including the right to make and enforce contracts.  Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 569 (3d Cir. 2002).  Under Title VI, a plaintiff must demonstrate (1) membership in a minority; (2) intentional discrimination; and (3) receipt of federal funds by the defendant.  42 U.S.C. § 2000d.  Under the NJLAD a plaintiff must show that (1) defendant operates a place of public accommodation; (2) the plaintiff is a member of a protected class; and (3) he or she was denied equal treatment on the basis of his or her membership in a protected class.  N.J.S.A.

5

10:5-12(f).

Generally, to survive summary judgment in a claim for unlawful discrimination, be it under § 1981, Title VI or the NJLAD, a plaintiff is required to establish a prima facie case of discrimination. Then the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the alleged discriminatory conduct. Should the defendant offer such a reason, the plaintiff will survive summary judgment by submitting evidence that defendant's justification is merely a pretext. See McDonnell Douglas Corp. v Green, 411 U.S. 792 (1973) (setting forth the above standard, commonly referred to as the McDonnell Douglass standard, for analyzing claims of unlawful discrimination).

The only disputed issue in the present case is whether Captain Hamp ejected Plaintiff because of his race. Furthermore, the McDonnell Douglass burden-shifting analysis, which is useful in deciding motions to dismiss and motions for summary judgment, must be applied in the context of a federal statute that addresses vital public concerns. Under the Federal Aviation Act, 49 U.S.C. § 44902(b), an air carrier "may refuse to transport a passenger or property the carrier decides is or might be inimical to safety." "Such a refusal cannot give rise to a claim for damages under either federal or [state] law unless the carrier's decision was arbitrary and capricious." Williams v. Trans World Airlines, 509 F.2d 942, 948 (2d Cir. 1975). That Act gives airline personnel broad, but not absolute, discretion to remove passengers for safety reasons. Al-Qudhai'een v. America West Airlines, Inc., 267 F. Supp. 2d 841, 846 (S.D. Oh. 2003).

> The test of whether or not the airline properly exercised its power under [§ 44902] to refuse passage to an applicant or ticket-holder rests upon the facts and circumstances of the case as known to the airline at the time it formed its opinion and made its decision and whether or not the opinion and decision were

6

> rational and reasonable and not capricious or arbitrary in the light of those facts and circumstances.

Williams, 509 F.2d at 948.

Thus, the standard for reviewing a carrier's decision is an objective one and the carrier's discretion is protected so long as it acted in good faith and its decision was rational. Dasrath, 228 F. Supp. at 539. Furthermore, "the objective assessment of a carrier's decision must take into account all the circumstances surrounding the decision, including the (perhaps limited) facts known at the time; the time constraints under which the decision is made; and, not least, the general security climate in which events unfold." Id.

Such considerations were discussed in Al-Qudhai'een, in which the court granted the defendant airline's motion for summary judgment against two Saudi Arabian citizens who sued the airline after being removed from a flight. In that case, the court found that the captain's decision to remove the two passengers was reasonable because he based his decision on reports that:

> 1) plaintiffs disobeyed defendant DeCampo's instructions and changed seats without permission; 2) plaintiff Al-Qudhai'een entered the first class area and proceeded to walk toward the cockpit without obtaining permission; 3) plaintiff Al-Qudhai'een appeared to be 'anxious' when he asked defendant Asada questions regarding the flight and became 'irritated' and 'uneasy' when informed that it would be stopping in Columbus, Ohio; and 4) defendant DeCampo considered plaintiff Al-Qudhai'een's questions about whether, the plane they were currently on would also be the one that would travel on to Washington, D.C. to be uncommon for a passenger.

Al-Qudhai'een, 267 F. Supp. 2d at 847. Given the above incidents, and taking into account all of the circumstances known to the captain, the court found that it was reasonable for him to remove the plaintiffs from the plane.

Interestingly, the above incidents refer primarily to plaintiff Al-Qudhai'een, and yet the

7

court found it reasonable to remove plaintiff Al-Shalawi as well. It should be noted, however, that the two passengers were flying together and that the flight crew knew they were together because plaintiff Al-Qudhai'een asked a flight attendant if he could sit next to plaintiff Al-Shalawi. Thus, although not expressly discussed by the court, it appears that plaintiff Al-Qudhai'een's activity was imputed to plaintiff Al-Shalawi because the two were traveling together.

In the present case, Dr. Nadarajah's behavior was similar to that of plaintiff Al-Qudhai'een in the above case. Thus, it was reasonable for Captain Hamp to have him removed from the plane. As Mr. Cureg was connected with Dr. Nadarajah, in that the two appeared to know each other and were engaged in conversation, just as plaintiff Al-Shalawi was connected with plaintiff Al-Qudhai'een, it was reasonable for Captain Hamp to remove Mr. Cureg as well.

Plaintiff, on the other hand, argues that he did not personally engage in suspicious activity nor did he have any contact with anyone else that was engaged in suspicious activity. According to Plaintiff, he did not speak with Mr. Cureg nor Dr. Nadarajah at any time, nor did he get out of his seat at any time after boarding the plane.

Therefore, viewing the facts in the light most favorable to Plaintiff, the only facts that might justify Captain Hamp's decision to remove Plaintiff are (1) his proximity to Mr. Cureg and Dr. Nadarajah; and (2) Ms. Brooks' statement to Captain Hamp that "those Brown skin men are acting suspicious."

As for the first fact, several white passengers were seated in first class along with Plaintiff and were thus in close proximity to Mr. Cureg and Dr. Nadarajah, yet none of them were removed from the plane or even investigated. Thus that fact cannot justify Captain Hamp's

decision to remove Plaintiff.

As for the second fact, Ms. Brooks' alleged statement can be interpreted in two different ways. First, Ms. Brooks may have only been referring to Mr. Cureg and Dr. Nadarajah, in which case, Captain Hamp presumed, based on skin color, that Plaintiff was somehow involved with Mr. Cureg and Dr. Nadarajah. As skin color is not a reasonable basis by which Captain Hamp can base his decision to remove Plaintiff, Ms. Brooks' statement, as interpreted in this manner, cannot justify Captain Hamp's decision to remove Plaintiff.

Alternatively, Ms. Brooks may have intended to refer to all three passengers. In that case, however, given the manner in which Ms. Brooks characterized the three passengers, i.e., as "brown skin men," a reasonable person in Captain Hamp's position would have had doubts about her basis for linking the three men and suspected that she presumed them to be together simply because they were of similar complexion, especially after learning that Plaintiff was not traveling with the other two. Thus Ms. Brooks' statement, interpreted in this way as well, cannot justify Captain Hamp's decision to remove Plaintiff.

Therefore, viewing the evidence in the light most favorable to Plaintiff, Plaintiff did not engage in any suspicious behavior, and there are no facts that reasonably connect him with Mr. Cureg and Dr. Nadarajah. Captain Hamp's decision to remove him from the plane could be found to be arbitrary and capricious. Thus Continental's motion for summary judgment will be denied.

**Compensatory Damages**

Continental further argues that the emotional distress aspect of Plaintiff's claim for compensatory damages should be dismissed because Plaintiff cannot prove that he suffered

9

emotional distress as a result of the alleged discrimination. But to recover compensatory damages for a § 1981 claim a plaintiff need only show "a reasonable probability . . . that damages due to emotional distress were in fact incurred . . . ." Gagliardo v. Connaught Labs., 311 F.3d 565, 573 (3d Cir. 2002). And although a "[p]laintiff must present actual evidence of emotional pain and suffering," Corbett v. National Prods. Co., No. 93-1216, 1995 U.S. Dist. LEXIS 3949, at *15 (D. Pa. 1995), expert medical testimony is not necessary. Bolden v. Southeastern Pa. Transp. Auth., 21 F.3d 29, 34 (3d Cir. 1994). In Corbett, the court held that the plaintiff's own testimony, in which he stated that he cried hysterically upon telling his wife that he had been fired, was sufficient to support his award for compensatory damages. 1995 U.S. Dist. LEXIS 3949, at *15. Similarly, under the NJLAD, a plaintiff's own testimony is sufficient to support a damage award for emotional distress. See e.g., Rendine v. Pantzer, 276 N.J. Super. 398, 442 (N.J. Super. Ct. 1994).

In the present case, Plaintiff testified that he felt humiliated and embarrassed throughout the incident and many times thereafter as he was forced to explain the incident to his family and to various Continental employees and government officials. He also testified that each time he has flown since the incident he has been afraid of suffering further embarrassment and humiliation. As that testimony is sufficient to support a claim of emotional distress, that aspect of Plaintiff's claim will not be dismissed.

**Injunctive Relief**

Finally, Continental argues that Plaintiff's claim for injunctive relief should be dismissed. In his complaint Plaintiff requests "a permanent injunction directing defendant and its directors, officers, agents, and employees to take all affirmative steps necessary to remedy the effects of the

illegal, discriminatory conduct described [in the complaint] and to prevent similar occurrences in the future." (Compl. ¶ 51(b)).

To secure a permanent injunction a plaintiff must (1) succeed on the merits; (2) demonstrate that denial of the injunction will result in irreparable harm; (3) show that granting the injunction will not result in irreparable harm to the defendant; and (4) show that granting the injunction is in the public interest. Boone v. Brown, No. 05-750, 2005 U.S. Dist. LEXIS 18131 at *39, (D.N.J. 2005).

Continental argues that Plaintiff's claim for injunctive relief should be dismissed because (1) he cannot show a likelihood of success on the merits; (2) he will not suffer irreparable harm if the injunction is not issued; and (3) the need for such an injunction has been rendered moot by a consent order between Continental and the Department of Transportation.

Continental's first contention, that Plaintiff cannot show a likelihood of success on the merits, has not yet been established. The requirement that a plaintiff demonstrate a likelihood of success pertains to a preliminary injunction. To secure a permanent injunction a plaintiff must ultimately succeed on the merits, but at the summary judgment stage he need only put forth enough evidence to show that a reasonable jury could find in his favor. As discussed above, Plaintiff met this burden by providing evidence that Continental's decision to remove him from the plane was arbitrary and capricious.

As to Continental's second contention, that Plaintiff will not suffer irreparable harm unless granted the injunction, Plaintiff concedes that he has flown Continental without incident approximately one hundred times since the removal. That fact strongly supports Continental's contention that it is extremely unlikely Plaintiff will again suffer the type of harm he experienced

here.

However, Plaintiff notes that in Bayaa v. United Airlines, Inc., 249 F. Supp. 2d 1198, 1205 (D. Cal. 2002), where the plaintiff alleged unlawful discrimination stemming from an incident in which he was removed from a plane, the court found that in order to survive a motion to dismiss, a plaintiff seeking an injunction need only allege "a likelihood of future contact with the defendant . . . ."

But that case is distinguishable from the present case in that "a court will not dismiss a plaintiff's claims for relief . . . unless he cannot prove any set of facts in support of his claims that would entitle him to relief." Id. at 1200.  Thus, in Bayaa, the court was required to allow the plaintiff the benefit of the doubt, for he might later submit evidence showing a likelihood of irreparable harm.

In the present case, unlike Bayaa, we are faced with a motion for summary judgment and must therefore consider all relevant evidence in addition to the pleadings.  Plaintiff's statement that he has flown Continental without incident approximately one hundred times since his removal indicates that any future discrimination is extremely unlikely.

Furthermore, Continental has already signed a consent order with the Department of Transportation in which it agreed to cease and desist from all future acts of unlawful discrimination that pertain to this case and to provide civil rights training to its pilots and cabin crew members at a cost of not less than $500,000.  Such an order further reduces the possibility that Continental will unlawfully remove Plaintiff from a plane in the future.

Continental's third contention is that the above consent order renders the need for an injunction moot.  That contention is not entirely correct because an injunction from this court

could further deter Continental from engaging in future unlawful discrimination, as violation of such an injunction could result in penalties above and beyond that provided in the consent order.

Nevertheless, the consent order makes it less likely that Continental will engage in future discrimination. As Plaintiff has not shown that he will experience irreparable harm if he is not granted injunctive relief, his claim for such relief will be dismissed.

## CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment is denied except as to Plaintiff's claim for injunctive relief. That aspect of Plaintiff's claim is dismissed. The court will enter an order implementing this opinion.


/s/ DICKINSON R. DEBEVOISE
DICKINSON R. DEBEVOISE, U.S.S.D.J.


Dated: February 16, 2006